**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  06-30371

THEODORE EMENSON WILSON, SR.
SARAH KATHERYN WILSON

Debtors

**MEMORANDUM ON OBJECTION
TO DEBTORS' CLAIM OF EXEMPTION**

APPEARANCES:    BOND, BOTES & LAWSON, P.C.
  Cynthia T. Lawson, Esq.
  5418 Clinton Highway
  Knoxville, Tennessee  37912
  Attorneys for Debtors

  ANN MOSTOLLER, ESQ.
  136 S. Illinois Avenue
  Suite 104
  Oak Ridge, Tennessee  37830
  Chapter 7 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Debtor's [sic] Claim of Exemption (Objection) filed on May 3, 2006, by the Chapter 7 Trustee, Ann Mostoller (Trustee), objecting to the Debtors' claimed homestead exemption in a tract of land adjoining their residence. A preliminary hearing on the Objection was held on May 25, 2006, at which time the parties agreed that an evidentiary hearing was not necessary, and the matter could be decided upon written stipulations and briefs. Pursuant to the court's Order entered on May 26, 2006, the parties filed Joint Stipulations on June 23, 2006, containing undisputed facts, stipulated documents, and an Affidavit of each Debtor. The Debtors' Brief in Opposition to Objection to Homestead Exemption by Trustee was filed on July 6, 2006, and the Brief of Ann Mostoller, Trustee, was filed on July 7, 2006. The court also takes judicial notice of relevant documents of record in the Debtors' bankruptcy case file pursuant to Rule 201 of the Federal Rules of Evidence.

The issue before the court is whether the Debtors are entitled to claim a $2,500.00 homestead exemption pursuant to Tennessee Code Annotated section 26-2-301 (Supp. 2005) in a five-acre tract that adjoins their house located at 7725 Walter Road, Corryton, Tennessee.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(B) (2005).

## I

The Debtors filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on March 3, 2006. On Schedule A, they listed two tracts of real property: a "[h]ouse and 4.8 acres located at 7725 Walter Road[,] Corryton[,] TN 37721" (Residence) and an "[a]djoining 5 acres of land located at 7725 Walter Road[,] Corryton[,] TN 37721" (Adjoining Property). The Debtors

assigned the Residence a "Current Value" of $115,000.00, subject to secured claims in the amount of $116,198.34. They assigned the Adjoining Property a "Current Value" of $2,500.00 and state that it is unencumbered.

The following facts are undisputed. The Debtors purchased the Residence by Warranty Deed recorded on June 9, 1986. *See* STIP. EX. C. The Debtors purchased 27.72 acres from Aurora Loan Services, Inc., by Special Warranty Deed recorded on July 12, 2000. *See* STIP. EX. D. A Plat Map dated April 16, 2001, shows the real property owned by the Debtors on that date, totaling approximately 35.73 acres, was subdivided into Tract 1, consisting of real property known as 7737 Walter Road, Corryton, Tennessee 37721, which was subsequently sold by the Debtors to William J. and Joy Betz Powers via a Warranty Deed recorded May 8, 2001; Tract 2, consisting of the back property, a portion of which is the Adjoining Property at issue in this contested matter; and Tract 3, consisting of the Residence. *See* STIP. EX. I. By Warranty Deed recorded December 7, 2004, the Debtors transferred Tract 2 to Christopher Tolliver and Bobby R. and Melanie J. Brown. *See* STIP. EX. F. Thereafter, by Quit Claim Deed recorded April 15, 2005, Christopher Tolliver and Bobby R. and Melanie J. Brown reconveyed the Adjoining Property to the Debtors. *See* STIP. EX. G.

In summary, the Debtors acquired the Residence on or about June 9, 1986. They originally acquired the Adjoining Property as part of a larger tract on or about July 12, 2000. The Adjoining Property was sold by the Debtors on December 7, 2004, and reacquired by them on or about April 15, 2005.

The Debtors separately listed the Residence and Adjoining Property on Schedule C, claiming an exemption in each under Tennessee Code Annotated section 26-2-301 (Homestead Statute). They claimed a $5,000.00 homestead exemption in the Residence and a $2,500.00 homestead exemption in the Adjoining Property, which is known as Mountain Top Lane.[1] *See* T. WILSON AFF. ¶ 5. The Trustee filed her Objection, arguing that the Debtors may not claim a homestead exemption in the Adjoining Property under the Homestead Statute. The Debtors argue that they are entitled to claim a portion of their homestead exemption in the Adjoining Property, along with the Residence, because they use both tracts of land as their primary residence.

## II

The filing of a bankruptcy petition creates the bankruptcy estate, and all property and interests in property owned by the debtor becomes property of the estate. 11 U.S.C. § 541(2005). A debtor may, however, exempt certain property interests by virtue of 11 U.S.C. § 522, which states, in material part:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is—
>
>> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law

---

[1] Although the Debtors listed the Adjoining Property with a street address identical to that of the Residence, 7725 Walter Road, it does not appear from the record that the Adjoining Property, in fact, fronts on Walter Road.

>   that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]
>
>   (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522 (2005). Exempted property "is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that the debtor] retains sufficient property to obtain a fresh start[.]" *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)). Therefore, exemptions, which are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors. *In re Nipper*, 243 B.R. 33, 35 (Bankr. E.D. Tenn. 1999). In order to take exemptions, debtors are required to file a statement listing the property claimed as exempt, along with the amount of the claimed exemption and the statutory basis therefore. *See* FED. R. BANKR. P. 4003(a).

Any party in interest may object to the exemptions claimed by a debtor, although that party bears the burden of proof that exemptions are improperly claimed. FED. R. BANKR. P. 4003(b), (c). If the objecting party fails to establish by a preponderance of the evidence that an exemption is improperly claimed, the exemption will retain its prima facie presumption of correctness and will stand. *In re Mann*, 201 B.R. 910, 915 (Bankr. E.D. Mich. 1996). Objections to exemptions must be filed "within 30 days after the meeting of creditors . . . is concluded or within 30 days after any

amendment to the list or supplemental schedules is filed, whichever is later." INTERIM FED. R. BANKR. P. 4003(b)(1).

Section 522(b) is the "opt out" provision, allowing states to require the use of their own exemptions rather than the federal exemptions enumerated in § 522(d). Tennessee has elected to "opt out" of the federal exemptions, as codified in Tennessee Code Annotated section 26-2-112:

> **Exemptions for the purpose of bankruptcy**. — The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26-2-112 (2000). *See also Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (finding that Tennessee's "opt-out" statute is constitutional).[2]

As material to this bankruptcy case, Tennessee's Homestead Statute provides:

(a) An individual, whether a head of family or not, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by the individual or the individual's spouse or dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000); provided, individuals who jointly own and use real property as their principal place of residence shall be entitled to homestead exemptions, the aggregate value of which exemptions combined shall not exceed seven thousand five hundred dollars ($7,500), which shall be divided equally among them in the event the homestead exemptions are claimed in the same proceeding.

---

[2] Section 522 was considerably impacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which applies to all bankruptcy cases filed on and after October 17, 2005, by the expansion of § 522(b)'s pre-existing requirements concerning a debtor's domicile and the addition of language exempting qualifying retirement funds from property of a debtor's estate. For the purposes of the "opt out" statute and the issue being addressed in this contested matter, however, BAPCPA did not alter application of § 522(b), nor did it render any of the prior case law concerning that subsection moot. Accordingly, all statutes and cases relied upon by the court in making its determination in this contested matter are pre-BAPCPA, but they are nevertheless still applicable to this BAPCPA case.

TENN. CODE ANN. § 26-2-301 (Supp. 2005). Accordingly, the Debtors are entitled to claim a $7,500.00 exemption in real property[3] that they own and which they use as a principal place of residence, and the Trustee has not challenged exemption allowance for the Residence as that property clearly fits within the scope of the Homestead Statute. The dispute arises, however, as to the Adjoining Property.

The Debtors argue that they use the Adjoining Property as if it were their backyard, and therefore, they should be entitled to the claimed exemption. In their Affidavits filed in support of the exemption, the Debtors offer the following examples: (1) they mow the entire area an average of once per week; (2) their family uses a pond stocked with catfish, bass, carp, and bluegill for recreational purposes; (3) they occasionally add copper sulfate to the pond to control the algae; (4) they have erected a storage building in which their lawn and fishing equipment are kept; (5) they pick blackberries from the bushes located there; and (6) they cut firewood off the property for use in the wintertime. T. WILSON AFF. ¶¶ 7 - 14; S. WILSON AFF. ¶¶ 7 - 14.

The Debtors cite the court to *Moses v. Groner*, a case decided by the Tennessee Supreme Court in 1900, which answered in the affirmative the question of whether the complainant was entitled to claim a homestead exemption in four unimproved lots that were not contiguous. Stating that the case law was "conclusive of this question," and citing *Smith v. Carter Bros. & Co.*, 84 Tenn. 527 (1886), and *First Nat'l Bank v. Meachem*, 36 S.W. 724 (Ct. Chanc. App. 1896), the Supreme

---

[3] Because the maximum homestead exemption claimed by the Debtors is, as authorized under Tennessee Code Annotated section 26-2-301(a), $7,500.00, the court presumes that the stepped-up exemption allowed under Tennessee Code Annotated section 26-2-301(e) (Supp. 2005) to individuals sixty-two years of age or older, has no application to these Debtors.

Court applied the homestead statute, as it existed at that time to allow the exemption. *Moses v. Groner*, 60 S.W. 497 (Tenn. 1900). The primary problem with relying upon these cases, however, is that the statute at the time was quite different from the statute as it exists today. As it existed in 1900, the homestead statute "exempt[ed] $1,000 of real estate belonging to the head of a family, whether living upon it or not." *Meachem*, 36 S.W. at 726. The "head of a family" and "non-residency" provisions were in effect until 1978, when the General Assembly revised that portion of the Homestead Statute to provide as it does today.

The residency issue was addressed in *In re Sivley*, wherein the following observations with respect to Tennessee's homestead exemption were articulated:

> Prior to the 1978 amendments, the Tennessee Constitution and statutes provided a homestead exemption in real property belonging to the head of a family. The 1978 amendments changed the constitution provision so that a homestead exemption of at least $5,000 must be provided but on terms set by the legislature.
>
> The legislature broadened the class of persons entitled to the homestead exemption by dropping the "head of a family" requirement. But the new statute narrowed the kinds of property which can be exempt by imposing the requirement that the property be used as a principal place of residence. Formerly, the debtor did not have to occupy the property as a residence. It is the residency requirement that raises the first question as to Mrs. Sivley's rights at the time of her bankruptcy.
>
> The residency requirement defines homestead more strictly than it has been defined in over a century. It is a return to the earlier concept of a homestead as a residence. The deletion of the head of a family requirement and the addition of the residency requirement show a clear legislative intent. The exemption is meant to protect the home of any person who owns one; the exemption is no longer an exemption for any real estate.

*In re Sivley*, 14 B.R. 905, 907-08 (Bankr. E.D. Tenn. 1981) (internal citations and footnote omitted); *see also In re Lingerfelt*, 180 B.R. 502, 503 (Bankr. E.D. Tenn. 1995) ("Today the claimant must own the property and actually use it as a residence[.]").

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). When the parties derive different interpretations from the statutory language, the court must determine if the language of the statute, after applying its ordinary and plain meaning, is ambiguous. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). In its current form, the Homestead Statute clearly limits application of the exemption to a "principal place of residence," which is not a defined term in the Tennessee Code Annotated. Nevertheless, the term is not ambiguous.

As stated by the *Sivley* court, "[w]hat is the debtor's principal residence depends both on the debtor's use and intent." *Sivley*, 14 B.R. at 908.

> The word "residence" has been defined as "a place where one dwells, where a person lives in settled abode, the place where a person lives with the intention of making it his home, and to which, whenever he is absent, he has the intention of returning. Residence is also defined to mean the principal domestic establishment of an individual, the place which he makes the chief seat of his affairs and interests.

*McDonough v. State Farm Mut. Auto. Ins. Co.*, 755 S.W.2d 57, 67 (Tenn. Ct. App. 1988) (quoting 77 CJS Residence at 300, 301). "Residence" is defined by *Black's Law Dictionary* as "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." BLACK'S LAW DICTIONARY 1308-09 (6th ed. 1990); *see also In re Hall*, 31 B.R. 42, 44 (Bankr. E.D. Tenn. 1983) ("'Residence' is defined as a 'factual place of abode.'") (quoting BLACK'S LAW DICTIONARY 1473 (4th ed. 1951)). The Bankruptcy Code defines "debtor's principal residence" as "a residential structure, including incidental property, without regard to whether that structure is attached to real property[.]" 11 U.S.C. § 101(13A)(A) (2005).

Generally, the court finds that a debtor's "principal place of residence" is his or her home, the place where the debtor lives with his family, inclusive of any real property acquired therewith.

Here, the Debtors are clearly entitled to claim the homestead exemption in the Residence. Their house, within which they and their children reside, is located upon the 4.8 acre tract acquired under the Warranty Deed recorded on June 9, 1986. They are not, however, entitled to a homestead exemption in the Adjoining Property because it is not the Debtors' "principal place of residence." It is merely a second tract of land owned by the Debtors and used for recreational purposes. They do not reside upon it, and that fact removes the Adjoining Property from the scope of the Homestead Statute.

The Adjoining Property was purchased separately from the Residence, originally as part of the 27.72-acre Tract 2 on or about July 12, 2000, all of which the Debtors sold on December 7, 2004. The Debtors then re-acquired the Adjoining Property through the Quit Claim Deed recorded on April 15, 2005. The Adjoining Property, known as Mountain Top Lane, is identified as a different tract from the Residence on the Plat Map.[4] It has a property description separate from that of the Residence. The Debtors do not reside on the Adjoining Property, and irrespective of the recreational activities that they engage in thereon, the Adjoining Property is not part of their Residence.

The most compelling argument in support of the Trustee's Objection are the statements and schedules filed by the Debtors. In the first place, Tennessee Code Annotated section 26-2-301

---

[4] The Debtors' assignment in their statements and schedules of identical addresses for the Residence and Adjoining Property appears wholly self serving and designed to erroneously characterize the two properties as a single parcel of land.

10

authorizes an individual to claim the homestead exemption in real property used by the individual "as a principal place of residence." Here, the Debtors in both Schedules A and C to their petition separately list the Residence and Adjoining Property, thereby distinguishing between their "principal place of residence" and the contiguous Adjoining Property. The distinction between the Residence and Adjoining Property is further acknowledged by the Debtors in their attempt to claim a homestead exemption in each of the two properties. As the Debtors can only have one "principal place of residence," their claim to a homestead exemption in the Adjoining Property is, on its face, improper.

An order sustaining the Trustee's Objection will be entered.

FILED: August 8, 2006

> BY THE COURT
>
> */s/  RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE